UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GREGORY M. COLE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:07-CV-1493 (JCH) |
| ) | |
| HOMIER DISTRIBUTING COMPANY, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss, filed September 27, 2007. (Doc. No. 12). The matter is fully briefed and ready for disposition.

**BACKGROUND**

Plaintiff Gregory Cole is the sole owner of Plaintiff Cole's Tractor & Equipment, Inc.[1]. (Compl., Doc. No. 1-2 at ¶ 1). Plaintiffs are both citizens of Missouri. (Id.). Defendant Homier Distributing Company, Inc. is an Indiana corporation that sells and distributes Farm Pro tractors, implements, tools, small engines, and related products. (Id. at ¶¶ 2-3). Defendant sells this equipment to distributors, who resell the equipment to dealers. (Id. at ¶ 3). Defendant also sells its equipment directly to dealers. (Id.). The dealers then resell the equipment to the public. (Id.).

In December 2001, Plaintiffs entered into an oral agreement with Defendant. (Id. at ¶ 5). Plaintiffs agreed to establish dealerships throughout Missouri to sell Farm Pro products and agreed

---

[1]Prior to February 2004, Plaintiffs operated under the name Cole's Tractor & Equipment. (Compl. at ¶ 1).

- 1 -

to purchase equipment from Defendant to resell to these dealers. (Id.). Plaintiffs would also buy "caged" or "crated" (unassembled) equipment that it would assemble and resell to the dealers. (Id.). In return, Defendant designated Plaintiffs as its exclusive distributor in Missouri and permitted them to establish dealerships in other states, subject to Defendant's approval. (Id.). Defendant also gave Plaintiff permission to sell the equipment directly to the public. (Id.).

Between December 2001 and September 2004, Plaintiff established more than thirty dealerships in Missouri, as well as a few dealerships in Arkansas, Kansas, Colorado, and Illinois. (Id. at ¶¶ 7-8). Plaintiffs and these dealerships orally agreed that they would buy their Farm Pro Products through Plaintiffs. (Id. at ¶ 33).

On September 20, 2004, the parties entered into a written distributorship agreement ("Agreement"). (Id. at p. 22). The Agreement provided:

> Homier Distributing Co., Inc. will not supply or distribute any whole goods to the dealers of Cole's Tractor & Equipment, Inc. which are listed on the Farm Pro North American Dealer listing. All dealers listed are grandfathered and protected. All future dealers . . . will be added to the Farm Pro North American Dealer Listing and covered by this document. Cole's Tractor & Equipment, Inc. will continue with the exclusive right to distribute to Farm Pro dealers Homier Distributing Co. Inc. wholegoods in the state of Missouri.

(Id.). The Agreement stated that it "may be terminated, by either party, for cause, giving at least 90 days written notice." (Id.).[2]

Shortly after signing these agreements, Defendant failed to supply Plaintiffs with enough inventory to run their distributorship properly. (Id. at ¶ 14). Defendant also refused to make sufficient caged and crated equipment available. (Id. at ¶ 17). Finally, Defendant raised the prices of its

---

[2]The parties also entered into a Distributor Caged Tractor Purchase Agreement on the same day. (Id. at p. 23). The Tractor Agreement provided that Plaintiff had to assemble any crated tractors before it resold them and had to keep a "readily available" supply of parts for the tractors. (Id.). It also allowed Plaintiff to purchase parts from other vendors under certain circumstances. (Id.).

equipment, which decreased Plaintiffs' sales. (Id. at ¶ 15). Plaintiffs claim that they lost fourteen of their thirty-eight dealerships due to these actions. (Id. at ¶¶ 14, 15). In March 2007, David Hulka ("Hulka"), Defendant's Director of Farm Pro products, visited twenty-four of Plaintiffs' dealerships and asked them to purchase Farm Pro products directly from Defendant. (Id.). After these meetings, Defendant began selling products to these dealerships, despite the Agreement with Plaintiffs. (Id. at ¶ 37). On June 13, 2007, Defendant allegedly offered to sell the dealers Farm Pro equipment at below list prices. (Id. at ¶ 24).

On June 15, 2007, Defendant sent notice to Plaintiffs that it was terminating the Agreement. (Id. at ¶ 19). Defendant stated that Plaintiffs had failed to "actively develop [their] territory for Farm Pro tractors" and that Plaintiffs' "sales performance as a distributor ha[d] severely declined in sales" from 2004 to 2007. (Id. at p. 26). Defendant stated that Plaintiffs had not lost their "status as a dealer of Homier Farm Pro product lines." (Id.). Defendant then contacted the twenty-four Missouri dealerships to persuade them to purchase equipment directly from it and "to cease doing business with the Plaintiffs immediately." (Id. at ¶¶ 36-37). Defendant also stopped providing Plaintiffs with "computer-generated sales leads." (Id. at ¶ 37). Plaintiffs claim that, before the notice of termination, Defendant would send it "on average, ten or more computer generated sales leads per week for each week." (Id.).

On August 21, 2007, Plaintiffs filed suit in the Circuit Court of St. Francois County, Missouri. (Notice of Removal, Doc. No. 1). The Complaint contained the following causes of action: Count I-- Breach of Contract (Agreement); Count II--Breach of Contract (Tractor Agreement); Count III-- Tortious Interference with a Business Relationship; Count IV-- Fraud; Count V-- violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.045. Defendant removed

this case on August 21, 2007 on the basis of diversity jurisdiction. (Id.). On September 27, 2007, Defendant filed its motion to dismiss asserting that Counts III-V fail to state a claim. (Doc. No. 12).

## MOTION TO DISMISS STANDARDS

In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Additionally, the Court must accept "the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005). A motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. ---, 127 S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). Stated differently, to survive a motion to dismiss, the Complaint's factual allegations "must be enough to raise a right to relief above the speculative level." Id. at 1965.

As a federal court sitting in diversity, this Court must apply the laws of the State of Missouri. Altru Health Sys. v. Am. Prot. Ins. Co., 238 F.3d 961, 962 (8th Cir. 2001). The Court looks first to decisions of the Missouri Supreme Court. Blum v. Allstate Ins. Co., 296 F. Supp.2d 1037, 1039 (E.D. Mo. 2003). If no relevant decisions are available, the Court will look to Missouri appellate court decisions. Id. The task is "to determine how the Missouri Supreme Court would decide the issue at hand." Id.

## DISCUSSION[3]

---

[3]In its Reply, Defendant asks the Court to strike Plaintiff's Response because it was filed five days late. (Reply, Doc. No. 16 at p. 1 n. 1). The Court enjoys "liberal discretion" in determining whether to grant a motion to strike. BJC Health Sys. v. Columbia Cas. Co., 478 F.3d 908, 917 (8th Cir. 2007). Striking pleadings and briefs, however, is a disfavored measure that is infrequently granted. Johnson v. Metro. Sewer Dist., 926 F. Supp. 874, 875 (E.D. Mo. 1996). The Court will not

**I.       Count III: Tortious Interference**

As previously stated, Plaintiffs have alleged that Defendant tortiously interfered with their contracts and business expectancies by contacting their dealerships between March 2007 and June 2007. (Compl. at pp. 10-11). Defendant asserts that Plaintiffs cannot state a tortious interference claim because the business expectancies arose from Plaintiffs' contracts with Defendant.

For Plaintiffs to succeed in their claim of tortious interference with a business expectancy, they must prove "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." Nazeri v. Missouri Valley Coll., 860 S.W.2d 303, 316 (Mo. 1993). The party interfering with the business relationship must be a third party. Fields v. R.S.C.D.B., Inc., 865 S.W.2d 877, 879 (Mo. Ct. App. 1993). A claim for tortious interference "will lie against only a third party, not a party to the subject contract." White v. Land Clearance for Redevelopment Auth., 841 S.W.2d 691, 695 (Mo. Ct. App. 1992). Missouri courts have held that "when a contract alone create a business expectancy, plaintiff cannot bring a claim for interference with a business expectancy against a party to that contract." BMK Corp. v. Clayton Corp., 226 S.W.3d 179, 191 (Mo. Ct. App. 2007); see Kelly v. State Farm Mutual Auto. Ins. Co., 218 S.W.3d 517, 525-26 (Mo. Ct. App. 2007)(dismissing agent's tortious interference claim against insurance company based on alleged interference with policyholders); Jurisprudence Wireless Communications. v. Cybertel Corp., 26 S.W.3d 300 (Mo. Ct. App. 2000) (dismissing cell phone dealer's tortious interference claim against a cell phone provider because the dealer only had an expectancy of future business due to the contract between the parties).

---

strike the Response because doing so would be an inappropriately harsh sanction for a five day delay in filing.

Here, Plaintiffs' tortious interference claim fails because their expectations of selling equipment to the dealers arose solely from their Agreement with Defendant. Plaintiffs only established the dealerships in response to their Agreement with Defendant. Plaintiffs did not have a preexisting relationship with any of these dealerships, which courts require a distributor to have with a buyer before a tortious interference claim can go forward against the distributor's supplier. See Am. Bus. Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1141 (8th Cir. 1986) (holding that a dealer could recover against a manufacturer for tortious interference with its business relationship where this relationship with a buyer predated the relationship between the dealer and manufacturer); see also BMK Corp, 226 S.W.3d at 191-192 (upholding a tortious interference action on similar grounds). As such, Count III will be dismissed because the Agreement created Plaintiffs' business expectancy.

## II.   **Count IV: Fraud**

Defendant asserts that Count IV fails because Plaintiffs have not alleged that Defendant made false representations, a necessary element of a fraud claim. Plaintiffs counter that Defendant's failure to reduce the Agreement to writing shows Defendant's fraudulent intent. Plaintiffs also assert that contacting the dealerships before terminating the Agreement shows that Defendant made false representations.

>A fraud claim consists of the following elements:
>
>>1) a representation, 2) its falsity, 3) its materiality, 4) the speaker's knowledge of its falsity, or his ignorance of the truth, 5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, 6) the hearer's ignorance of the falsity of the representation, 7) the hearer's reliance on the representation being true, 8) his right to rely thereon, and 9) the hearer's consequent and proximately caused injury.

LaFont v. Taylor, 902 S.W.2d 375, 376 (Mo. Ct. App. 1995). A promise accompanied by a present intent not to perform is a misrepresentation sufficient to constitute fraud. Breier v. Koncen Meat Co.,

762 S.W.2d 499, 500 (Mo. Ct. App. 1988). An allegation that is "as consistent with honesty and good faith as [it is] with fraud" does not allege a fraudulent representation. Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1064 (8th Cir. 2005). Missouri courts also hold that "a failure to perform alone ... is not sufficient to establish the intent of the promisor at the time the agreement was made. The mere giving of a promise, though breached the next day, does not give rise to an action for tortious fraud." Carlund Corp. v. Crown Center Redevelopment Co., 910 S.W.2d 273, 279 (Mo. Ct. App. 1995).

Upon consideration, Plaintiffs pleadings fail to allege any false representations that would support a fraud claim. Plaintiffs allege that Defendant has been plotting to steal these dealership since 2001 and point to two facts to support this claim. (Compl., Doc. No. 1 at ¶ 43). First, Plaintiffs rely on Defendant's failure to reduce the agreement to writing for three years. This fact does not support a fraud claim because Defendant performed under the terms of the oral agreement. See Comprehensive Software Sys., Inc., 406 F.3d at 1064. Additionally, Defendant's contact with the dealerships prior to the Agreement's termination alleges nothing more than a breach of contract. Carlund Corp, 910 S.W.2d at 279. In sum, Plaintiffs' allegations are merely conclusory statements that Defendant did not intend to perform the contract at the time of its formation. See Fed. R. Civ. P. 9(b) (stating the circumstances constituting fraud must be pled with particularity). Thus, Plaintiffs' fraud claim fails and Count IV will be dismissed.

### III. Count V: the MMPA

Defendant asserts that Count V fails because the MMPA does not create a claim for "constructive termination." Plaintiffs respond that a prior Eighth Circuit decision has recognized such a cause of action under the MMPA.

The MMPA, in relevant part, states:

> No person who has granted a franchise to another person shall cancel or otherwise terminate any such franchise agreement without notifying such person of the cancellation, termination or failure to renew in writing at least ninety days in advance of cancellation, termination or failure to renew . . . .

Mo. Rev. Stat. § 407.405. The MMPA defines franchise as:

> [A] written or oral agreement for a definite or indefinite period, in which a person grants to another person a license to use a trade name, trademark, service mark, or related characteristic, and in which there is a community of interest in the marketing of goods or services at wholesale, retail, by lease, agreement, or otherwise . . . .

Id. at § 407.400(1). The Eighth Circuit has held that a franchisor cannot "in effect terminate" the franchise during the ninety day notice period because to do so would render the act "meaningless." Am. Bus. Interiors, Inc., 798 F.2d at 1141 (holding that failure to provide franchisee with information during ninety day period violated the Act). A franchisee suffering damages from a failure to give the required notice may "sue to recover damages, including loss of goodwill, costs of the suit, and proper equitable relief." Id. at 1141; Mo. Rev. Stat. § 407.410(2).

Here, Plaintiffs' pleadings allege that Defendant effectively terminated their franchise before the ninety day period ran. Specifically, Plaintiffs allege that Defendant stopped giving them computer generated leads and began contacting their dealerships. These allegations, if true, would show that Defendant prevented Plaintiffs from operating their franchise during the ninety day period, in violation of the MMPA.

Defendant contends that the Court should ignore American Business Interiors, Inc. because the Eighth Circuit has held more recently that a constructive termination claim is not cognizable under similar state franchising statutes. See Taylor Equip., Inc. v. John Deere Co., 98 F.3d 1028 (8th Cir. 1996) (interpreting South Dakota law); Zeno Buick-GMC, Inc. v. GMC Truck & Coach, 844 F. Supp 1340 (E.D. Ark. 1992) aff'd 9 F.3d 115 (8th Cir. 1993) (interpreting Arkansas law). This

argument is without merit because <u>American Business Interiors, Inc.</u> is binding precedent on this Court until the Missouri courts or the Eighth Circuit states otherwise. <u>Hood v. United States</u>, 342 F.3d 861, 864 (8th Cir. 2003) (holding the district court must apply Eighth Circuit precedent); <u>Blum v. Allstate Ins. Co.</u>, 296 F. Supp.2d 1037, 1039 (E.D. Mo. 2003).

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss (Doc. No. 12) is **GRANTED** in part and denied in part.

**IT IS FURTHER ORDERED** that Count III and Count IV of the Complaint are **DISMISSED**.

Dated this 28th day of November, 2007.

/s/ Jean C. Hamilton<br>
UNITED STATES DISTRICT JUDGE