UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GREGORY M. COLE and,                    )
COLE'S TRACTOR & EQUIPMENT, INC.        )
                                        )
        Plaintiff(s),                   )
                                        )
        vs.                             )        Case No. 4:07CV01493 JCH
                                        )
HOMIER DISTRIBUTING COMPANY, INC.,      )
                                        )
        Defendant(s).                   )

## MEMORANDUM AND ORDER

This matter is before the Court upon Defendant's Motion for Summary Judgment. (Doc. No.
40). This matter has been fully briefed and is ready for disposition.

## BACKGROUND

A.      Parties/Background

Defendant Homier Distributing Company, Inc. ("Homier") sells tools, tractors, and other
sundry items manufactured by other companies. (Defendant's Statement of Uncontroverted Facts
("DSUF"), Doc. No. 57, ¶ 1). Beginning in December 2002, Plaintiff Gregory Cole entered an oral
agreement with Homier to be a Farm Pro distributor and dealer. (DSUF, ¶¶ 7, 8).[1] Farm Pro
products consist primarily of imported Chinese tractors. (DSUF, ¶ 3). In February 2004, Gregory
Cole incorporated under the name Cole's Tractor & Equipment, Inc. ("Cole's Tractor"). (DSUF,
¶ 19). On September 20, 2004, Cole's Tractor and Homier entered into a written Distributorship

---

[1] A "dealer" is a company which sells tractors to the public on a retail basis and a "distributor"
sells tractors on a retail basis and is also entitled to establish dealers below them on the sales chain
and to sell tractors to those dealers. (DSUF, ¶4; Memorandum in Support of Defendant Homier
Distributing Company, Inc.'s Daubert Motion to Exclude the Testimony of Dr. Bart A. Basi
("Daubert Memorandum"), Doc. No. 53, pp. 2-3).

Agreement and the Distributor Caged Tractor Purchase Agreement. (DSUF, ¶ 21). The Distributorship Agreement provided that Cole's Tractor had the exclusive right to sell "whole goods" to dealers established by it or located in Missouri and required 90 days written notice and "cause" to terminate the agreement. (DSUF, ¶ 21). The Distributor Caged Tractor Purchase Agreement provided that Cole's Tractor agreed to assemble Farm Pro tractors to a warrantable standard, to perform any routine repairs needed to properly assemble the tractors, and to maintain the parts needed to make routine repairs or to seek said parts from Homier or elsewhere. (DSUF, ¶ 21).

On June 15, 2007, Defendant issued a notice of termination of the Distributorship Agreement of September 20, 2004 because, according to Defendant, Plaintiffs were "not actively developing [their] territory for Farm Pro Tractors." (Complaint, ¶ 19[2]; Exhibit E, Doc. No. 57-4). Defendant alleged that Plaintiffs' sales performance had declined from 2004 through 2007. (Id.) Plaintiffs allege that Defendant did not honor the 90 day notice provision in the distributor agreement but instead began selling directly to Plaintiffs' dealerships during the 90 day notice period. (Id., ¶ 23).

B.    Complaint

Count I for Breach of Contract alleges that Homier breached the distributorship agreement by (1) terminating the distributorship in the absence of good cause, (2) selling Farm Pro tractor and related equipment and parts and implements directly to the public within the state of Missouri through the Internet, (3) failing to provide tractors, parts, implements and related equipment insufficient volume to meet Plaintiffs' resale needs, and (4) failing to provide Plaintiffs with sufficient parts to repair Farm Pro tractors sold through the Plaintiffs and to meet Plaintiffs' dealers warranty obligations. In Count II for Breach of Contract, Plaintiffs allege that Homier breached their contract

---

[2]Plaintiffs filed their Petition originally in the Circuit Court of St. Francois County, Missouri, but Defendant removed the case to this Court on August 21, 2007 (Doc. No. 1). The Petition filed in state court is referred to herein as the Complaint.

by constructively terminating Plaintiffs' Farm Pro distributorship in 2005 by failing to provide a sufficient number of most models of "caged" (unassembled) tractors. In Count V, Plaintiffs allege that Homier constructively terminated their Farm Pro distributorship without notice in violation of Missouri's Franchise Act, Mo. Rev. Stat. § 407.405, by directly marketing and selling tractors, parts and implements to dealers established by Plaintiffs and not forwarding sales leads to Plaintiffs during the 90-day notice period.

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex

Corp., 477 U.S. at 331, n.2. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

**DISCUSSION**

I.    Counts I and II

In their Motion for Summary Judgment, Defendant argues that "Homier is entitled to summary judgment on Counts I and II because: (1) the distributorship agreement is not a legally enforceable contract as it does not obligate the parties to buy and/or sell a definable amount of product; (2) Homier terminated Plaintiffs' Farm Pro distributorship for non-discriminatory business reasons, which is a legally sufficient cause for termination; (3) none of the implied contract terms that Homier allegedly breached can fairly be read into the distributorship agreement; (4) Plaintiffs lack any competent evidence that would allow a jury to calculate their damages arising from the alleged breaches." (Memorandum in Support of Defendant Homier Distributing Company Inc.'s Motion for Summary Judgment ("Memorandum in Support"), Doc. No. 56, p. 3).

For purposes of this summary judgment motion, the Court assumes that there was a valid, enforceable contract between Homier and Cole's Tractor and that Cole's Tractor can demonstrate that Homier breached that contract. The Court's analysis instead focuses on the issue of damages, which are an essential element of a submissible breach of contract claim. Teets v. Am. Family Mut. Ins. Co., 272 S.W.3d 455, 461 (Mo. Ct. App. 2008); Guidry v. Charter Communs., Inc., 269 S.W.3d 520, 527-28 (Mo. Ct. App. 2008) (including as part of the breach of contract jury instruction that "plaintiffs were thereby damaged"). "The party claiming damages for breach of contract bears the burden of proving the existence and amount of the damages with reasonable certainty." Ullrich v. CADCO, Inc., 244 S.W.3d 772, 779 (Mo. Ct. App. 2008).

Plaintiffs attempt to support their damages claim by the testimony and report of their expert, Dr. Basi, and also their own calculations. Defendant filed a <u>Daubert</u> Motion to Exclude the Testimony of Dr. Bart A. Basi (Doc. No. 52), and argued in its Reply Memorandum in Support of Summary Judgment that Plaintiffs should be precluded from introducing their own testimony of their purported damages. For the reasons stated herein, the Court holds Counts I and II of the Complaint fail because Plaintiffs are unable prove any damages related to the alleged breach of the contracts.

A.    Dr. Basi fails to meet the criteria for a proper expert opinion.

Defendant alleges it is entitled to summary judgment because Plaintiffs have failed to provide any competent evidence of damages. Defendant argues that Plaintiffs' claim for damages is based solely on the testimony of Dr. Basi and that, upon its challenge of Dr. Basi's testimony, Plaintiffs provide their own, untimely damage calculations.

The law for whether an expert opinion should be excluded is well-settled. "'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" <u>Wash Solutions, Inc. v. PDQ Mfg.</u>, 395 F.3d 888, 895 (8th Cir. 2005) (quoting <u>Hartley v. Dillard's, Inc.</u>, 310 F.3d 1054, 1061 (8th Cir. 2002)). The expert's testimony must be excluded only if it is so fundamentally unsupported by the facts that it can offer no assistance to the jury. <u>Id</u>.

Defendant seeks to exclude the testimony of Dr. Basi, Plaintiffs' damages expert because Dr. Basi "(a) lacks the essential facts concerning his clients and their relationship to Defendant Homier, thereby leading him to inaccurate conclusions; (b) many of the facts he received and relied on, are inaccurate; (c) his methodology is flawed, thereby rendering his opinion of no value; and (d) his future lost profits analysis represents rank speculation, again making his opinion worthless to the trier of

fact." (Defendant Homier Distributing Company, Inc's <u>Daubert</u> Motion to Exclude the Testimony of Dr. Bart A. Basi, Doc. No. 52, ¶4).

Dr. Basi's report is fatally flawed because he relied on stale and incorrect data and failed to properly analyze the information provided to him. Specifically, to calculate Cole Tractor's lost profits, Dr. Basi used all of Cole's Tractor's profits as both a distributor and a dealer. Defendant, however, only terminated Plaintiffs' distributor relationship with Defendant. As discussed herein, the evidence supports a finding that Cole's Tractor continued to act as a dealer after the termination of the distributorship.

In his report, Dr. Basi assumes that Plaintiffs had no revenue after September 2007, i.e., after the 90 notice period and when Cole's Tractor was no longer a Farm Pro distributorship. (DSUF, ¶ 65). In support of this position, Plaintiffs argue that termination of the distributorship agreement effectively terminated their dealership agreement, which permitted Plaintiffs to sell tractors and related equipment to the public from their Farmington, Missouri location, but not throughout Missouri and other states through the thirty plus network of dealerships Plaintiffs had established under the distributorship agreement. (Plaintiffs' Response to Defendant's Motion for Summary Judgment ("Plaintiffs' Response"), Doc. No. 61, ¶ 4). Plaintiff alleges that "[a]fter September 16, 2007, Homier treated the dealership agreement as terminated, refusing to recognize Plaintiffs as an authorized service center for warranty work." (Plaintiffs' Response, ¶ 5: Memorandum in Opposition, p. 3). Plaintiffs also argue that the termination of the distributorship agreement effectively terminated the dealership agreement because Cole's Tractor was unprofitable unless it was an exclusive distributorship, not a dealership. (Plaintiffs' Response, ¶ 5; Memorandum in Opposition, p. 4). Plaintiffs claim that they would have not entered into a dealership agreement with an exclusive

distributorship because Plaintiffs could not be profitable exclusively as a dealership. (Memorandum in Opposition, p. 4).

Dr. Basi assumed for purposes of his report that Cole's Tractor ceased operating and selling after September 2007. (Daubert Memorandum, p. 6). The uncontroverted evidence demonstrates that Dr. Basi's premise was erroneous. The Notice of Termination explicitly provided that Cole's Tractor would contiue as a dealership even after it stopped being a distributorship. See Doc. No. 4-2, Exhibit E. Plaintiffs stated that they have Farm Pro product in their inventory for sale. (DSUF, ¶¶ 42-45). Both Greg and Christy Cole also confirmed that Cole's Tractor continued to sell Farm Pro product more than a year after the termination of Cole's Tractor as a distributorship, and that Farm Pro still has Farm Pro inventory to meet its customers' needs. (Daubert Memorandum, p. 6). Plaintiffs still sold AgTrac tractors (products similar to Farm Pro tractors) after the termination of the distributorship agreement. (DSUF, ¶¶ 40-41). Thus, Dr. Basi's presumption that Plaintiffs had no revenue after September 2007 presents an inaccurate depiction of Plaintiffs' circumstances and a faulty basis for his damages opinion.

Furthermore, the information relied upon by Dr. Basi was not current. Dr. Basi's calculations ended with the 2006 calendar year and did not take into account any information for 2007 and 2008. (Daubert Memorandum, p. 5). Notably, Cole's Tractor's Farm Pro 2007 sales declined more rapidly than in prior years, as Plaintiffs' sales dropped over a million dollars from the calendar year 2006 Farm Pro Sales. (Id.)

Dr. Basi's report is also inadmissible because of its improper, speculative lost profits calculation. "Under Missouri law, '[l]ost profits related to a breach preventing performance are recoverable provided the loss is the natural and proximate result of the breach, is ascertainable with reasonable certainty, is not speculative or conjectural, and was within the contemplation of the parties

when the contract was made.'" Structural Polymer Group, Ltd. v. Zoltek Corp., 543 F.3d 987, 997 (8th Cir. 2008) (quoting Farmer's Electric Co-op., Inc. v. Missouri Dep't of Corrections, 59 S.W.3d 520, 522 (Mo. 2001)). "The general rule under Missouri law is that anticipated profits of a commercial business are too remote and speculative to warrant recovery. They can only be recovered when they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount. The proof required to sustain lost profits is 'exacting.' Competent and substantial evidence is required to support an award of damages. Moreover, speculation as to probable or expected lost business profits is spurned, and an unsupported opinion or estimate of a loss of profits is generally held to be insufficient." Tipton v. Mill Creek Gravel, Inc., 373 F.3d 913, 918 (8th Cir. 2004) (internal citations omitted) (applying Missouri law). "For established businesses, 'proof of the income and expenses of the business for a reasonable time anterior to its interruption, with a consequent establishing of the net profits during the previous period, is indispensable.'" Tipton, 373 F.3d at 918 (quoting Coonis v. Rogers, 429 S.W.2d 709, 714 (Mo. 1968)).

The most troublesome aspect of Dr. Basi's lost profits calculation is that it extends for 25 years [3] and assumes that sales will continue to increase annually by 3%.[4] Plaintiffs have not cited any authority that would allow Dr. Basi to calculate damages for 25 years. Dr. Basi's calculation is entirely speculative and without foundation. See Tipton, 373 F.3d at 919, n. 6 ("Missouri courts have consistently rejected projections when they are based upon assumptions or hopeful expectations."). The Court believes it would be confusing to the jury for Dr. Basi to present his calculations given that

---

[3]Dr. Basi used the 25 year computation period based upon the age when Greg Cole could "retire, qualify for social security and so forth..." (Daubert Memorandum, p. 4.)

[4]Dr. Basi assumes a continued 3% growth rate despite the downturn in Farm Pro tractor sales during the past several years. Dr. Basi also did not take into account any variable expenses saved by Plaintiffs due to the termination of Cole's Tractor's Farm Pro distributorship. (Daubert Memorandum, p. 7).

he has not provided reasonable evidence to support the rate or amount of lost profits. Dr. Basi has not provided a reasonable degree of certainty and exactness required for a lost profits calculation. For example, Plaintiffs and Dr. Basi have not cited to a single contract or potential transaction in which it was involved from which lost profits can be derived. See Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptance Group N.V., 28 F. Supp. 2d 126, 131-34 (S.D.N.Y. 1998). Dr. Basi did not provide evidence to a reasonable degree of certainty that Plaintiffs' profits would have continued to accrue for 25 years at a rate of 3% increase.

Accordingly, this Court holds that the testimony and report of Dr. Basi shall be excluded and grants Defendant's Daubert Motion (Doc. No. 52). A reasonable jury would not be able to ascertain the amount of damages with reasonable certainty based upon Dr. Basi's report. Because Plaintiffs purport to rely solely on Dr. Basi's testimony for its damages analysis and calculation, Plaintiffs cannot prove an essential element of their claim and Homier's Motion for Summary Judgment on Counts I and II is granted.

2.      Other Damages Evidence

In an effort to supplement their damages claim, Plaintiffs now assert that they can support their damages claim through their own testimony and calculations, without the assistance of an expert. Plaintiffs, however, have at all times previously (in depositions and written discovery) stated that they were not able to calculate their damages and were relying instead on the calculations of Dr. Basi. Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment provides the first time that Plaintiffs indicated that they would be able to calculate their own damages. Plaintiffs' calculations, however, are insufficient to withstand Defendant's Motion for Summary Judgment.

Initially, summary judgment cannot be defeated by Plaintiffs' affidavits that contradict their prior deposition testimony and interrogatory answers. In Interrogatory Number 12, Defendant asked

Plaintiffs to "[s]tate in detail and identify, by category, the amount of damages you are seeking in this lawsuit, and for each such amount, identify all facts, documents, or other evidence used to calculate said amount." (Doc. No. 67-6). In response to Interrogatory Number 12, Plaintiffs responded that they "have retained Dr. Bart Basi, a CPA, to calculate their damages. His work is not yet complete." (Id.) Plaintiffs never supplemented their answer to this interrogatory. (Defendant Homier Distributing Company, Inc.'s Reply in Support of Its Motion for Summary Judgment ("Reply Memorandum"), Doc. No. 72, p. 5). Now, however, Plaintiffs, in their affidavits and deposition errata sheets, purport to provide testimony supporting their damages claim. Defendant has never been able to perform discovery on Plaintiffs' new assertion that they can provide a reasonable basis for their damages, absent any expert testimony. (Reply Memorandum, pp. 3-5).[5]      Plaintiffs are barred from providing evidence in the form of affidavits and deposition errata sheets that contradicts their deposition testimony to support their damages claim. Plaintiffs have not made these arguments prior to the briefing on Defendant's Motion for Summary Judgment. As noted by Defendant in its Reply, Plaintiffs failed to put forth these claims in their Complaint or at any time prior to the close of discovery, including during Gregory and Christy Cole's depositions. (Reply Memorandum, pp. 17-18). Now, Plaintiffs attempt to avoid summary judgment bolstered solely but the Coles' self-serving affidavits. A "contradictory affidavit is insufficient to create a genuine issue of material fact." Mountain Pure, LLC v. Bank of Am., N.A., 481 F.3d 573, 577 (8th Cir. 2007) (citations omitted); see also Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir. 1988) ("district court may grant summary judgment where a party's sudden and unexplained revision of testimony creates an

---

[5]In Plaintiffs deposition errata sheets, they now claim taht they suffered $18,000 in damages by sales made by Homier to its dealer prior to the 90 day notice period, sustained $300 in damages by sales made by Homier during the 90 day notice period, and have lost goodwill in the amount of $500,000. (Reply Memorandum, p. 3, n. 2). Defendants were not provided with any of these calculations prior to February 5, 2009. (Id.)

issue of fact where none existed before").  Plaintiffs' assertion that they can provide evidence of their damages absent the testimony and report of their excluded expert, Dr. Basi, "is so contradictory to everything else that it raise[s] only a sham issue."  Mountain Pure, LLC, 481 F.3d at 577.  The Court precludes Plaintiffs from presenting evidence of their damages, as such evidence would be contradictory to their prior, sworn deposition testimony.  RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 402 (8th Cir. 1995) ("This circuit has long held that parties to a motion for summary judgment cannot create sham issues of fact in an effort to defeat summary judgment.")

Consequently, this Court grants Defendant's Motion for Summary Judgment on Counts I and II of Plaintiffs' Complaint.  Plaintiffs are unable to provide any evidence of their damages, which is an essential element of the breach of contract claims.

II.	Count V

In Count V, Plaintiffs allege that Defendant constructively terminated the Distributorship Agreement without first giving ninety days notice of the termination by contacting Plaintiffs' dealerships before and during the ninety-day period (beginning mid-June 2007)[6] by asking the dealerships to purchase Farm Pro tractors and related products directly from the Defendants. (DSUF, ¶ 51).  Defendant argues that "[s]ummary judgment is warranted on Count V because Homier did not cause Plaintiffs to suffer a substantial decline in revenue during the notice of termination period, which is the standard for a constructive termination claim under Mo. Rev. Stat. § 407.405." (Memorandum in Support, p. 3).

In their Opposition to Defendant's Motion for Summary Judgment, Plaintiffs set forth a number of purported sales made by Defendant directly to other dealers in violation of their contracts.

_____

[6]The parties do not dispute that on June 15, 2007, Homier sent Greg Cole a letter providing 90 days notice of its plan to terminate Cole Tractor's Farm Pro distributorship.  See Notice of Termination, Doc. No. 4-2, Exhibit E.

Plaintiffs argue that some of these sales were made during the 90-day notice period. <u>See</u> Affidavits of Greg and Christy Cole, ¶11. Plaintiffs' evidence of those purported sales, however, do not satisfy the standards of Rule 56(c). <u>See</u> <u>Davidson & Assocs. v. Jung</u>, 422 F.3d 630, 638 (8th Cir. 2005)("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor.")

Plaintiffs have failed to provide any independent documentary evidence of these purported sales. In their affidavits, the Coles claim that "[t]he documents recently turned over by Homier[7] also reflect ... that Homier also sold Farm Pro tractor products ... to nine dealerships established by Plaintiffs, in violation of the agreement, between December 2002 and September 16, 2007." (Affidavits of Gregory and Christy Cole, Doc. Nos. 60-2 and 60-3, ¶11).[8] The Coles allege that $3,247.84 in sales were made during the 90-day notice of termination period. (<u>Id</u>.) The Coles, however, provide absolutely no documentary evidence to support these claims, even though Homier recently provided documents that purportedly support Plaintiffs' claims. Accordingly, Plaintiffs' baseless assertions in their affidavits are insufficient to overcome the uncontroverted evidence in Defendant's Motion for Summary Judgment. "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." <u>Gander Mt. Co. v. Cabela's, Inc.</u>, 540 F.3d 827, 831 (8th

---

[7]Plaintiffs appear to argue that they did not receive documents on which they now rely until after the depositions of Plaintiffs. Homier, however, has provided evidence that it made those documents available six months prior to the completion of Plaintiffs' depositions. (Reply Memorandum, p. 6). Plaintiffs did not request to inspect the documents until thirteen days after the close of discovery. (<u>Id</u>.) Plaintiffs cannot claim that these documents were unavailable to them or that they should be allowed to change their damages calculation the purported unavailability of these documents was caused by Plaintiffs' own delay.

[8]Plaintiffs seem to be alleging damages for sales by Homier to dealers either established by Plaintiffs or located in Missouri. Plaintiffs have not alleged any such claim in Counts I and II of their Complaint. As Plaintiffs have never amended their Complaint to add any sales that occurred prior to the 90 day notice period, any such purported claims cannot be considered. <u>See</u> <u>Rogers v. City of Des Moines</u>, 435 F.3d 904, 909-10 (8th Cir. 2006).

Cir. 2008) (citations omitted); <u>Davidson</u>, 422 F.3d at 638 ("A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor."). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S. Ct. 2505, 2519 (1986).

This Court grants summary judgment in favor of Defendant on Count V. Plaintiffs have failed to provide any evidence to support a claim that they were damaged by Defendant's purported breach of the 90-day notice provision. Plaintiffs' unsupported, self-serving affidavits are insufficient to avoid Defendant's substantiated Motion for Summary Judgment on Count V.

III.    Miscellaneous Motions to Strike.

Plaintiffs have filed various motions to strike. Plaintiffs filed a Motion to Strike portions of the affidavit of Charles Homier that purport to support Defendant's claims regarding the alleged oral agreement between the parties and whether the distributorship agreement was terminated in good faith (Doc. No. 64). As this Court decided Defendant's Motion for Summary Judgment based solely on Plaintiffs' inability to prove damages, Mr. Homier's testimony is not relevant to the Court's determination and Plaintiffs' Motion to Strike (Doc. No. 64) is denied as moot.

Plaintiffs asked the Court to strike portions of Defendant's Reply Brief in support of its Motion for Summary Judgment and Reply Brief in support of its Daubert Motion (Doc. Nos. 73, 75, 77). The Court believes that Plaintiffs' position is not well-founded and denies their Motions to Strike portions of the Reply Briefs.

Finally, Plaintiffs filed a Motion to Strike Portions of the Affidavit of David Hulka (Doc. No. 79). Plaintiffs allege that portions of Mr. Hulka's affidavit constitute inadmissible hearsay. Plaintiffs'

objections to the referenced portions of Mr. Hulka's affidavit are not well-founded and Plaintiffs'

Motion to Strike (Doc. No. 79) is denied.

**CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 55) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS HEREBY FURTHER ORDERED** that Defendant's Motion to Exclude the Testimony of Dr. Bart Basi (Doc. No. 52) is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs' Motion to Strike the Additional Documents, Depositions, Interrogatory Answers and Other Supporting Documents Filed As part of Defendant's Reply in Support of Its Summary Judgment Motion; and Alternative Motion for Ten Additional Days After March 2, 2009 in Which to Respond to the Additional Supporting Documents, Depositions, Etc. Filed as Part of Defendant's Reply Memorandum (Doc. No. 73) is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs' Motion to Strike Portions of the Reply Filed by Defendant in Support of its Daubert Motion to Exclude the Testimony of Dr. Bart Basi; Alternative Motion for Ten Additional Days in Which to Respond to These Additional Supporting Materials (Doc. No. 75) is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs' Motion to Strike Portions of the Brief and the Additional Documents, Depositions, Interrogatory Answers and other Supporting Documents Filed as Part of Defendant's Reply in Support of its Summary Judgment Motion; and

Alternative Motion for Ten Additional Days After the Court Rules on This Motion, In Which to Respond to Portions fo the Reply Brief and to the Additional Supporting Documents, Depositions, Etc. Filed as Part of Defendant's Reply Memorandum (Doc. No. 77) is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that Plaintiffs' Motion to Strike Portions of the Affidavit of David Hulka (Doc. No. 79) is **DENIED**.

Dated this 20th day of March, 2009.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE